**CURRY INVESTMENT COMPANY, MLB Holdings, LLC d/b/a American Pawn and CBS Outdoor, Inc., Respondents,**

v.

**The BOARD OF ZONING ADJUSTMENT OF KANSAS CITY, MISSOURI, Appellant.**

No. WD 75479.

Missouri Court of Appeals, Western District.

May 7, 2013.

M. Margaret Moran, Kansas City, MO, for Appellant.

Mary Shaney, James Bowers, Jr., Patricia Jensen, Kansas City, MO, for respondent, CBS Outdoors, Inc.

James Mueller, Kansas City, MO, for respondent, Curry Investment Co.

Before JAMES EDWARD WELSH, C.J., VICTOR C. HOWARD, J., and PEGGY STEVENS McGRAW, Sp.J.

JAME EDWARD WELSH, Chief Judge.

■ Curry Investment Company, MLB Holdings, LLC, and Outdoor, Inc., (Curry[1]) appeal the Board of Zoning Adjustment's (BZA) decision that conditioned approval of a special use permit on the removal of two nonconforming outdoor advertising signs.[2] Curry asserts two points on appeal. First, Curry contends that the BZA erred when it conditioned its approval of the special use permit for a pawn shop on the removal of two outdoor advertising signs. Curry argues that the signs represent existing and lawful nonconforming uses and that the BZA had no authority per section 88–525–09 of the Kansas City Zoning and Development Code (Code) to make conditions unrelated to approval of the special use permit. Additionally, Curry argues that the conditions violate Missouri law pursuant to section 226.527, RSMo Cum.Supp.2012. Second, Curry contends that the BZA erred in denying the request for rehearing because CBS, the owner of the outdoor advertising signs, was not notified of the proceeding that proposed removal of the signs and, therefore, its due process rights were violated. As Curry's first point is dispositive, we need not address its second claim. We affirm the circuit court's judgment modifying the decision of the BZA.

On May 20, 2011, MLB Holdings filed an application requesting a special use permit to operate a pawn shop at 8307 North Oak Trafficway in Kansas City, Missouri. The landowner, Curry Investment Company, agreed to lease its building and parking lot to MLB. The building and parking lot were previously leased to a business known as "Max Speed and Sound," a car audio and performance center. The property where the building and parking lot

---

1. For ease of the reader, Curry Investment Company, MLB Holdings, LLC, and CBS Outdoor, Inc., will hereinafter collectively be referenced as "Curry." Where Curry Investment Company is individually referenced, it will be identified as "Curry Investment."

2. Although the BZA is challenging the circuit court's reversal of the BZA's decision to require sign removal as a condition for approval of a special use permit, we review the decision of the BZA and not of the circuit court. *State at Relation of Noland Road Raceways, Inc. v. Board of Zoning Adjustment of Kansas City,* 145 S.W.3d 455, 456 (Mo.App. 2004). Rule 84.05(e) requires the party aggrieved by the agency decision to file the appellant brief. Thus, Curry filed the appellant's brief as the party aggrieved by the BZA's decision.

are located contains two nonconforming outdoor advertising signs, which Curry Investment leases to CBS Outdoor.

The BZA held a hearing on July 12, 2011, concerning MLB's application. The BZA staff submitted a report at the hearing that cited the requisite special use permit criteria, per section 88–525–09 of the Code, and concluded that "all of these criteria are met with the proposed application." The report also stated:

> In recent years staff has had a general policy that as property is redeveloped,[3] any existing billboards that are on the site are removed within five years of the approval of the development. The City Plan Commission has affirmed that position several times, specifically in the last several months.... Staff believes as part of the approval process for a pawn shop that this development be held to the same standard as other developments within other areas of the City.

Curry Investment opposed any condition that required removal of the signs. Ultimately, the BZA approved the special use permit subject to certain conditions, including removal of the outdoor advertising signs. Curry Investment and MLB requested a rehearing. On August 23, 2011, the BZA held a hearing on the request for rehearing, and the BZA thereafter denied a rehearing. On September 22, 2011, Curry petitioned the circuit court for a Writ of Certiorari. The circuit court issued its Writ on October 17, 2011, and, thereafter, the BZA filed its Return to the Writ of Certiorari. The court held a hearing on March 15, 2012, and took the matter under advisement. On June 19, 2012, the court issued its Judgment and found that the BZA's decision to require removal of the two outdoor advertising signs for special use permit approval for the pawnshop was

not supported by substantial and competent evidence, was unrelated to any impact generated by the pawnshop use at the property, and exceeded the BZA's authority. The court, pursuant to section 89.110, RSMo 2000, modified the BZA's decision and struck the conditions for the special use permit that required removal of the signs. The BZA then filed a notice of appeal which, pursuant to Rule 84.05(e), required Curry to file an appellant's brief due to having been aggrieved by the agency decision.

When reviewing the propriety of a BZA decision, we review the BZA's ruling, rather than that of the circuit court. *State at Relation of Noland Road Raceways, Inc. v. Board of Zoning Adjustment of Kansas City*, 145 S.W.3d 455, 456 (Mo.App.2004). "The scope of review is limited to determination of whether the BZA's judgment is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction." *Id.* We view the evidence and reasonable inferences in the light most favorable to the decision. *Id.* at 457.

In Curry's first point on appeal, Curry contends that the BZA erred when it conditioned its approval of the special use permit for a pawn shop on the removal of two outdoor advertising signs. Curry argues that the signs represent existing and lawful nonconforming uses and that the BZA had no authority per section 88–525–09 of the Code to make conditions unrelated to approval of the special use permit. Additionally, Curry argues that the conditions violate Missouri law pursuant to section 226.527. The BZA disagrees and contends that it was authorized under the city's Code to consider the site conditions and impact on the neighborhood of the pawn shop that was proposed to be

---

**3.** We do not comment on whether an application for a special use permit to allow a specific type of business to operate is a redevelopment of the land.

located on the same site as the two non-conforming signs. The BZA asserts that the condition of sign removal was reasonably related to the special use permit being requested and was not in violation of Missouri law. We find the BZA's decision unreasonable.

■ The BZA does not contest that the signs at issue are nonconforming. "Under the nonconforming use doctrine, zoning restrictions adopted by a municipality may not be applied so as to require removal or cessation of an established use of land—a use which does not conform with a use authorized by the zoning restriction." *Outcom, Inc. v. City of Lake St. Louis,* 996 S.W.2d 571, 575 (Mo.App.1999). The city's Code recognizes the vested rights associated with nonconforming signs and section 88–445–14–B–5 of the Code states that "[l]egal nonconforming outdoor advertising signs may remain" subject to certain provisions. The provisions address such issues as sign maintenance and repair, sign abandonment, compliance with electronic/video technology, and relocation. The BZA makes no contention that the outdoor advertising signs in question violate the Code such that their nonconforming nature has been compromised. The BZA argues, however, that certain aspects of the proposed site for the pawn shop did not comply with the Code's standards and that conditioning approval of the special use permit for the pawn shop on removal of the nonconforming signs was within the BZA's authority under the Code.

The BZA contends that its authority to require removal of nonconforming signs as a condition for a special use permit comes from its mandate to determine if a proposed special use complies with the standards of the Code, whether it is in the interest of the public convenience and will not have a significant adverse impact on the general welfare of the neighborhood or community, and whether it is compatible with the character of the surrounding area in terms of building scale and project design. While we decline to comment on whether such a condition might be justified given different facts, it is not allowable here as the BZA's justifications for the conditions are unsupported by the record.

The record reflects that the BZA staff examined all of the special use criteria set forth in the Code at section 88–525–09 and concluded that "all of these criteria are met with the proposed application." Therefore, the staff found the proposed pawn shop, in its proposed location: 1) to be in compliance with the standards of the Code, 2) to be in the interest of public convenience and to not have a significant adverse impact on the general welfare of the neighborhood or community, 3) to be compatible with the character of the surrounding area in terms of site planning and building scale and project design, 4) to be compatible with the character of the surrounding area in terms of operating characteristics, such as hours of operation, outdoor lighting, noise, and traffic generation, and 5) to not have a significant adverse impact on pedestrian safety or comfort. While the BZA now contends otherwise on appeal, nothing in the record suggests that removal of the nonconforming outdoor advertising signs was related to any of the special use criteria set forth in the Code. To the contrary, the BZA staff stated that all of the special use criteria were met, but that sign removal was recommended based on a "general" staff policy that as property is redeveloped, the removal of existing billboards is required.

■ "The issuing of a permit is a ministerial act, not a discretionary act, which may not be refused if the requirements of the applicable ordinance have been met." *State ex rel. Kugler v. City of Maryland*

*Heights,* 817 S.W.2d 931, 933 (Mo.App. 1991). Therefore, once it was determined that the criteria for the special use permit were met, it was unreasonable to require removal of the nonconforming signs as a special use permit condition. While the BZA may want to foster a general policy that, as property is redeveloped, any existing billboards on a site are removed, where the BZA has proven no relation to sign removal with the special use criteria set forth in the Code at 88–525–09, this policy is in contradiction to city Code 88–445–14–B–5 which protects nonconforming signs. As applied here, the sign removal condition imposed by the BZA was unreasonable.[4] Point one is granted.

We, therefore, conclude that the BZA erred by conditioning approval of a special use permit for a pawn shop on the removal of two nonconforming outdoor advertising signs. All special use criteria were met for issuing the permit, and it was unreasonable for the BZA to thereafter condition issuance of the permit on the removal of lawfully existing nonconforming signs. We affirm the circuit court's judgment modifying the decision of the BZA.[5]

All concur.

---

**4.** Clearly, the BZA has some discretion, when determining if the special use criteria are met, to make conditions for the issuance of the permit if the conditions are reasonably related to the special use criteria and are not arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. Once the special use criteria are met, however, the BZA's discretion for issuing the permit ends.

**5.** As we find the BZA's decision unreasonable pursuant to section 88–525–09 of the Kansas City Zoning and Development Code, we need not address Curry's contention that the BZA violated section 226.527.